**SAUL EWING ARNSTEIN & LEHR LLP**
Valerie G. Pennacchio
One Riverfront Plaza, Suite 1520
Newark, New Jersey 07102
(tel) (973) 286-6717
(fax) (973) 286-6817
valerie.pennacchio@saul.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GATX CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GEORGIA POWER COMPANY,<br><br>　　　　Defendant. | C.A. No.: _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

GATX Corporation ("GATX") brings this Complaint against Defendant Georgia Power Company ("Georgia Power"), and alleges as follows:

**INTRODUCTION**

1. This breach of contract action arises out of the Parties' dispute regarding Georgia Power's responsibility for corrosion damage to 160 railcars leased from GATX (collectively, the "Cars").

2. Under the terms of its lease, Georgia Power was required to limit its use of the cars to "a non-corrosive, non-placarded commodity."

3. Georgia Power's use of the Cars has caused substantial corrosion damage that is not ordinary wear and tear, and for which Georgia Power is responsible under the parties' lease.

4. Georgia Power has refused, however, to pay for any corrosion damage.

1

5.     Accordingly, GATX brings this action to recover damages resulting from Georgia Power's breach of contract.

## THE PARTIES

6.     GATX is a New York corporation with its principal place of business in Chicago, Illinois. By way of merger, GATX is the successor in interest to GATX Financial Corporation, a New York corporation with its principal place of business in Chicago, Illinois. (GATX and GATX Financial Corporation are hereinafter individually and collectively referred to as "GATX.")

7.     Defendant Georgia Power is an investor owned, tax-paying public utility with a principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because GATX and Georgia Power are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Georgia Power because Georgia Power purposely availed itself of the privilege of conducting business with a New York corporation and has availed itself of the benefits and protections of New York law by virtue of the parties' contractual agreement, which is governed by New York law.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (i) GATX is a New York corporation, (ii) Georgia Power is subject to this Court's personal jurisdiction with regard to this action, and (iii) the parties expressly agreed that New York law would govern and control their relationship.

**FACTUAL BACKGROUND**

11.     The Cars are leased by Georgia Power under the Parties' Railcar Master Net Lease Agreement and incorporated documents (the "Master Net Lease"). (Ex. 1.)

12.     The Master Net Lease was originally executed on or about March 8, 2004, between Georgia Power as Lessee, and GATX Financial Corporation as Lessor (GATX Financial Corporation is a predecessor-in-interest of GATX Corporation, and for simplicity, the two entities are referred to individually and collectively as "GATX").

13.     On or about October 1, 2007, Georgia Power and GATX executed Supplement No. 2 to the Master Net Lease ("Supplement No. 2"), which provided for the lease of 75 brand-new, automatic discharge, open top hoppers (the "Supplement No. 2 Cars"). (Ex. 2, ¶ 1.)

14.     The original term of Georgia Power's lease of the Supplement No. 2 Cars ended on or about November 30, 2012. (*Id.* ¶ 6.)

15.     By letter agreement dated November 30, 2012 ("2012 Amendment to Supplement No. 2"), however, Supplement No. 2 was amended to extend the lease of the Supplement No. 2 Cars to November 30, 2014. (Ex. 3, ¶ 1.)

16.     Georgia Power's lease of the Supplement No. 2 Cars was subsequently extended again, by letter agreement dated November 12, 2014 ("2014 Amendment to Supplement No. 2"), to November 30, 2017. (Ex. 4.)

17.     On or about October 1, 2007, Georgia Power and GATX also executed Supplement No. 3 to the Master Net Lease ("Supplement No. 3"), which provided for the lease of 85 brand-new, automatic discharge, open top hoppers ("Supplement No. 3 Cars"). (Ex. 5, ¶ 1.)

18.     The original term of Georgia Power's lease of the Supplement No. 3 Cars ended on or about January 13, 2013. (*Id.* ¶ 6.)

19.     By letter agreement dated November 30, 2012 ("2012 Amendment to Supplement No. 3"), however, Supplement No. 3 was amended to extend the lease of the Supplement No. 3 Cars to January 12, 2015. (Ex. 3, ¶ 2.)

20.     Georgia Power's lease of the Supplement No. 3 Cars was subsequently extended, by a letter agreement dated November 12, 2014 ("2014 Amendment to Supplement No. 3"), to January 12, 2018. (Ex. 6.)

### THE TERMS OF THE MASTER NET LEASE

21.     The Master Net Lease requires Georgia Power to maintain the Cars in good condition and repair at its own expense and to return the cars in substantially the same condition as they were at the time of delivery.

22.     For example, Paragraph 6.1 of the Master Net Lease provides:

> **Lessee, at its sole cost and expense, shall maintain each of the Cars in good operating condition, normal wear and tear excepted, with any broken, damaged or missing parts replaced, substantially in the same condition as when received by Lessee**, suitable for immediate use for the purposes set forth in the relevant Supplement, and meeting (i) applicable standards as prescribed by the rules and regulations of any Governing Authority with jurisdiction, including, without limitation, the FRA, in effect during the relevant Term and (ii) the maintenance requirements of the manufacturer currently applicable to the Cars.

(Ex. 1, ¶ 6.1.) (emphasis added).

23.     Likewise, Paragraph 8.2 of the Master Net Lease states in part:

> **Lessee shall return the Cars to Lessor (i) in the same operating condition, complete with all parts (and with all parts working and not broken), equipment and accessories as when initially delivered to Lessee, ordinary wear and tear excepted**; (ii) in compliance with all FRA and AAR regulatory requirements, including the Interchange Rules, (iii) suitable for immediate use for the purposes set forth in the relevant Supplement, (iv) sufficiently clean and substantially free of graffiti, (v) Cleaned of Commodities, as defined in Section 8.5 below, and (vi) otherwise in full compliance with Section 6 hereof.

(*Id*. ¶ 8.2.) (emphasis added).

24. The Master Net Lease also makes Georgia Power liable to GATX for any "Losses" relating to or arising out of a breach ("Event of Default"), including GATX's costs and attorneys' fees.

25. Paragraph 7.1 of the Master Net Lease states that Georgia Power:

shall indemnify and hold harmless Lessor, its successors and assigns, subsidiaries and affiliates and its and their respective representatives, directors, officers, employees and agents (each, an "Indemnitee" and, collectively, the "Indemnitee Group") from and against any and all Losses (as defined in Section 7.4) relating to or arising out of or in connection with (i) this Master Agreement and each Lease hereunder (including any amendments, supplements, waivers or modifications relating thereto, and including any violations by Lessee thereof, any Event of Default hereunder and under any Lease and any exercise of remedies in connection therewith to the extent not in violation of any Lease and applicable law)[.]

(*Id.* ¶ 7.1)

26. Paragraph 7.4, in turn, defines the term "Losses" as used in Paragraph 7.1, as:

all fees, costs and expenses arising out of or in connection with any actions, suits, proceedings, hearings, investigations, charges, complaints, claims, demands, injunctions, judgments, orders, losses (including loss of use), liabilities, damages (including damages to property and injuries or death of persons, and including consequential damages), penalties, fines, amounts paid in settlement, taxes or liens, including, without limitation, attorneys' fees and expenses, court costs, and costs incurred in connection with any investigation, cleanup, remedial, removal, or restoration work.

(*Id.* ¶ 7.4)

27. In executing the Master Net Lease, Georgia Power also represented that the lading that it was using the Cars to transport would be "a non-corrosive, non-placarded commodity." (*Id.* ¶ 5)

28. Moreover, the Master Net Lease requires Georgia Power to pay hold-over rent equal to 150% of the base rent amount ("Hold-Over Rent") for any Car that is not returned when due, or until such Car is returned and accepted by GATX in the condition required. (*Id.* ¶ 8.4.)

29. Pursuant to Paragraph 13.6, the Master Net Lease is governed by New York law without regard to New York's choice of law doctrine. (*Id.* ¶ 13.6.)

### SUPPLEMENT NO. 2

30. Supplement No. 2 incorporates the terms of the Master Net Lease by reference. (Ex. 2, ¶ 12.)

31. In executing Supplement No. 2, Georgia Power represented: "Lessee will use the [Supplement No. 2] Cars for aggregate service. Lessee represents that such lading is a non-corrosive, non-placarded commodity." (*Id.* ¶ 5.)

32. Supplement No. 2 provides for Hold-Over Rent to be accrued and paid as set forth in the Master Net Lease. (*Id.* ¶ 7.)

33. The 2012 Amendment to Supplement No. 2 also provides: "Except as otherwise provided in this paragraph (1), all terms and conditions of Supplement No. 2 and the Master Agreement shall continue to apply to the Supplement No. 2 Railcars during such extended term." (Ex. 3, ¶ 1.)

34. Under the terms of the 2014 Amendment to Supplement No. 2, the lease of the Supplement No. 2 Cars continued under the same conditions specified under Supplement No. 2, unless the 2014 Amendment to Supplement No. 2 expressly provided otherwise. (Ex. 4.)

35. The 2014 Amendment to Supplement No. 2 further provides that "[T]he Cars on this Supplement may only be used to carry Gypsum and Limestone, Broken or Crushed. Additional commodities may only be carried in the [C]ars with GATX's prior written consent." (*Id.*)

### SUPPLEMENT NO. 3

36. Like Supplement No. 2, Supplement No. 3 also incorporates the terms of the Master Net Lease by reference. (Ex. 5, ¶ 13.)

37. In executing Supplement No. 3, Georgia Power again represented that "Lessee will use the [Supplement No. 3] Cars for aggregate service. Lessee represents that such lading is a non-corrosive, non-placarded commodity." (*Id.* ¶ 5.)

38. Supplement No. 3 similarly provides for Hold-Over Rent to be accrued and paid as set forth in the Master Net Lease. (*Id.* ¶ 7.)

39. The 2012 Amendment to Supplement No. 3 also provides: "Except as otherwise provided in this paragraph (1), all terms and conditions of Supplement No. 3 and the Master Agreement shall continue to apply to the Supplement No. 3 Railcars during such extended term." (Ex. 3, ¶ 2.)

40. Under the terms of the 2014 Amendment to Supplement No. 3, the lease of the Supplement No. 3 Cars continued under the same conditions specified under Supplement No. 3, unless the 2014 Amendment to Supplement No. 3 expressly provided otherwise. (Ex. 6.)

41. Finally, the 2014 Amendment to Supplement No. 3 provides: "[T]he Cars on this Supplement may only be used to carry Gypsum and Limestone, Broken or Crushed. Additional commodities may only be carried in the [C]ars with GATX's prior written consent." (*Id.*)

### THE UNREPAIRED CORROSION DAMAGE TO THE CARS

42. Georgia Power returned the Supplement No. 2 Cars to GATX on or about November 27, 2017.

43. Georgia Power returned the Supplement No. 3 Cars to GATX on or about May 21, 2018.

44. GATX and Georgia Power subsequently inspected the Cars, and discovered significant corrosion damage in excess of normal wear and tear.

45. Georgia Power's use of the Cars is the cause of such damage, which will cost more than $5 million to repair.

46. GATX has noticed Georgia Power of the inspection results, and the cost to repair, but Georgia Power has refused to honor its responsibility for such damage under the terms of the Master Net Lease.

47. Accordingly, GATX now brings this action for breach of contract.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

48. GATX incorporates by reference and thereby re-alleges the preceding paragraphs as if fully set forth herein.

49. The Master Net Lease is a valid and enforceable contract between the parties.

50. GATX has performed all of its obligations under the Master Net Lease.

51. Georgia Power has breached the Master Net Lease, by among other things, failing to repair, and/or refusing to pay to repair, the corrosion damage to the Cars.

52. As a result of Georgia Power's breach of the Master Net Lease, GATX has incurred damages in excess of $5 million.

53. Among other things, Georgia Power is liable to GATX for the cost to repair the corrosion damage to Cars, Hold-Over Rent, attorneys' fees, interest, and other amounts due and owing under the Master Net Lease.

54. GATX has demanded payment from Georgia Power in writing and given Georgia Power an opportunity to cure its breach, but Georgia Power has refused and its breach remains uncured.

55. GATX is entitled to recover damages from Georgia Power in an amount to be proved at trial, and at least $ 5 million.

## PRAYER FOR RELIEF

WHEREFORE, GATX prays that this Court award it the following relief:

a) Damages of at least $5 million;

b) An award of GATX's costs and expenses, including attorneys' fees, incurred in enforcing GATX's rights and remedies thereunder;

c) A Hold-Over Rent owed by Georgia Power under the Master Net Lease;

d) An award of prejudgment interest at a rate of nine percent per annum under New York C.P.L.R. § 5001, *et seq.*;

e) An award of postjudgment interest; and

f) Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff GATX Corporation, a New York corporation, demands a trial by jury on all issues so triable.

Date:   October 23, 2018 	Respectfully submitted,

                                              SAUL EWING ARNSTEIN & LEHR, LLP


                                              By:   */s/ Valerie G. Pennacchio*
                                                  *Valerie G. Pennacchio*
                                                  One Riverfront Plaza, Suite 1520
                                                  Newark, New Jersey 07102
                                                  (tel) (973) 286-6717
                                                  (fax) (973) 286-6817
                                                  valerie.pennacchio@saul.com

                                                  John C. Gekas (*Pro Hac Vice* motion forthcoming)
                                                  161 N. Clark St., Suite 4200
                                                  Chicago, Illinois 60601
                                                  (tel) (312) 876-7124
                                                  (fax) (312) 876-7313
                                                  john.gekas@saul.com

                                                  *Attorneys for GATX Corporation*