UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| GATX CORPORATION,<br><br>Plaintiff,<br><br>—v—<br><br>GEORGIA POWER COMPANY,<br><br>Defendant. | |

18-cv-9758 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff GATX Corporation ("GATX") brings this suit for breach of contract against

Defendant Georgia Power. Georgia Power has moved to dismiss for lack of personal jurisdiction

or, in the alternative, to transfer the case to the Northern District of Georgia. For the reasons

below, the Court GRANTS Georgia Power's motion to dismiss.

## I.    BACKGROUND

The following facts are drawn from the allegations in Plaintiff's Complaint which, at this

stage of the litigation, are taken as true unless otherwise contradicted. *MacDermid, Inc. v.*

*Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (on a motion to dismiss under Rule 12(b)(2),

allegations "must be taken as true to the extent they are uncontroverted by the defendant's

affidavits"). The Court also looks to a declaration submitted by Georgia Power. Declaration of

Christine Lewter ("Lewter Dec."), Dkt. No. 15. Finally, the Court looks to a number of

agreements between the parties, which are incorporated by reference in the Complaint. *See*

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In 2004, GATX Financial Corporation ("GATX Financial") and Georgia Power entered

into a Master Lease Agreement by which the latter would lease railcars from the former. Compl.

1

¶ 12, Ex. 1 (the "Master Lease Agreement"). Georgia Power is a Georgia Corporation with a principal place of business in Georgia. Compl. ¶ 7. Georgia Power has no offices, property, or employees in New York. Lewter Decl. ¶ 13. This agreement was executed in Georgia. *Id.* ¶ 5. Under the Master Lease Agreement, payments by Georgia Power were either to be made by check to a post office box in Chicago, Illinois or wire transferred to a bank headquartered in Chicago. Master Lease Agreement § 2.3. Notices under the agreement would be sent to Georgia Power through a company in Birmingham, Alabama, and to GATX Financial in Chicago. *Id.* § 13.1. Section 13.6 of the Master Lease Agreement states that it will be governed by New York law. *Id.* There is no choice of venue provision in the Master Lease Agreement.

In 2007, the successor by merger to GATX Financial, named GATX, entered into two supplemental agreements to the Master Lease Agreement. Compl. Exs. 2 & 5. GATX is a New York corporation with a principal place of business in Illinois. Compl. ¶ 6. These supplemental agreements were also for the delivery of railcars. Compl. Exs. 2 & 5. Neither of these supplemental agreements changed the choice of law provision in the Master Lease Agreement, nor did they include a choice of venue provision. *See* Compl. Ex. 2 § 12; Compl. Ex. 5 § 13. These agreements were executed in Atlanta, Georgia. Lewter Decl. ¶¶ 5-6. There were also subsequent extensions of these agreements, but all of the relevant agreements at issue here were executed in Chicago or Georgia. *Id.* ¶ 6. The negotiations over all the relevant agreements took place "remotely via telephone and email between GATX representatives in Chicago, Illinois or Alpharetta, Georgia and Georgia Power representatives in Atlanta, Georgia or Birmingham, Alabama." *Id.* ¶ 7.

Georgia Power took physical possession of the railcars in question Ontario, Canada. *Id.* ¶ 8. After this, "Georgia Power never used the Railcars in New York and the Railcars did not

travel through the State of New York." *Id.* During the course of the leases, Georgia Power

corresponded with GATX through employees of GATX in Alpharetta, Georgia, and Chicago.

*Id.* ¶ 11. In addition, "[n]o Georgia Power representative . . . ever visited the State of New York

for the purpose of transacting business pursuant to the Master Lease Agreement or Supplements

2 and 3." *Id.* ¶ 12. The rail cars were ultimately returned in Decoursey, Kentucky in 2017 and

2018. *Id.* ¶ 10; Compl. ¶¶ 42-44.

GATX alleges that when the railcars were returned they showed "significant corrosion

damage in excess of normal wear and tear." Compl. ¶¶ 42-44. GATX further alleges that

Georgia Power refused to repair this damage or reimburse GATX for repairs. Compl. ¶ 46.

GATX subsequently brought this suit for breach of contract. On December 31, 2018, Georgia

Power moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case

to the Northern District of Georgia. Dkt. No. 13. On January 10, 2019, GATX informed the

Court that it intended to rely on its Complaint and exhibits in response to Georgia Power's

motion. Dkt. No. 23. Georgia Power then filed an opposition on January 28, 2019, Dkt. No. 26,

and GATX replied on February 15, 2019, Dkt. No. 29.

## II.    LEGAL STANDARD

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or

entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d

30, 34 (2d Cir. 2010). This "showing entails making legally sufficient allegations of jurisdiction,

including an averment of facts that, if credited, would suffice to establish jurisdiction over the

defendant." *Id.* at 35 (internal quotation marks and brackets omitted). On a Rule 12(b)(2)

motion, "the plaintiff need persuade the court only that its factual allegations constitute a *prima*

*facie* showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85

(2d Cir. 2013). The Court will "constru[e] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[e] all doubts in the plaintiff's favor." *Am. Buddha*, 609 F.3d at 34. On the other hand, the Court will not "accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks omitted). The Court will also consider declarations submitted by Defendant. *MacDermid*, 702 F.3d at 727.

## III. ANALYSIS

The reach of this Court's personal jurisdiction in this case is governed by the laws of its forum state, New York. *See Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). Plaintiff GATX asserts that long-arm jurisdiction exists by virtue § 302(a)(1) of the New York long-arm statute, under which "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. 302(a)(1). Under this provision, courts conduct a two-pronged analysis: "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Licci*, 673 F.3d at 60 (internal quotation marks and alteration omitted). As to the first prong, the Second Circuit has provided a non-exhaustive set of four factors to consider:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). No one factor is dispositive. *Id.* at 23. And while these factors are relevant, the "ultimate determination is based

on the totality of the circumstances." *Id.* (internal quotation marks omitted). The Court analyzes each of these four factors in turn.

The first factor, the existence of a contractual relationship, weighs only slightly in favor of exercising personal jurisdiction. Ever since 2007, GATX and Georgia Power have been in a contractual relationship. This relationship involved six agreements or extensions of existing agreements. Compl. ¶¶ 13-20. The length of this relationship and the parties' numerous reaffirmances of the relationship weigh in GATX's favor. However, if a contract "was to be performed entirely outside of New York," a contract with a New York entity "does not mean that [defendant] transacted business in New York." *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008); *see also Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11-cv-1616 (RJH), 2011 WL 5838697, at *9 (S.D.N.Y. Nov. 21, 2011) (in analyzing contract with New York party, focused on fact that "the transaction . . . [was] being directed to somewhere other than New York"). For example, the Second Circuit held that if a New York bank hires a law firm in Puerto Rico to negotiate and prepare a legal opinion regarding an oil refinery in Puerto Rico, the law firm has not transacted business in New York. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787-89 (2d Cir. 1999). Here, GATX does not dispute that the object of the agreements were railcars located entirely outside of New York. Furthermore, the contract was subsequently "performed outside of New York" which is of "great[] significance." *See Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 376 (S.D.N.Y. 2009) (quoting *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 91 (2d Cir. 1975)). Finally, because Georgia Power made this contract with GATX not in GATX's "capacity as a resident of New York," but rather as owner of property outside of New York, the existence of such a contract is "at best" neutral. *Rosenblatt v. Coutts & Co. AG*, 750 F.

App'x 7, 10 (2d Cir. 2018). As a result, this factor provides little to no weight in favor of exercising personal jurisdiction.

The second factor weighs against personal jurisdiction. If a contract is negotiated outside of New York, "the place of negotiation and execution of the contract weighs against concluding that [defendant] transacted business in New York." *Rosenblatt*, 750 F. App'x at 10–11; *see also Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261–62 (S.D.N.Y. 1995) (finding no personal jurisdiction in New York in part because the contract in question was negotiated through remote communications with parties in different countries), *aff'd*, 201 F.3d 431 (2d Cir. 1999). GATX does not dispute that the contracts at issue here were negotiated and executed entirely outside of New York. This factor therefore weighs against the conclusion that Georgia Power transacted business in New York.

Because the agreements at issue contain New York choice-of-law clauses, the third factor weighs in favor of exercising personal jurisdiction. A choice of law clause is a "significant factor" weighing in favor of jurisdiction. *Sunward Elecs*, 362 F.3d at 23. A choice of law clause "alone, however, is insufficient to confer personal jurisdiction over a non-domiciliary." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009) (citing *Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062, 1065–66 (2d Cir. 1974)); *see also Berkshire Capital Grp., LLC*, 2007 WL 2757116, at *3; *Premier Lending Servs., Inc. v. J.L.J. Assocs.*, 924 F. Supp. 13, 17 (S.D.N.Y. 1996). Accordingly, while relevant, a contract with a New York choice-of-law clause is not sufficient to qualify as transacting business for the purposes of New York's long-arm statute.

The fourth factor weighs against the exercise of personal jurisdiction. As an initial note, while the Second Circuit's articulation of the fourth factor in *Sunward Electronics* refers to

"whether the contract requires *franchisees* to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state," 362 F.3d at 22 (emphasis added), the test has been applied outside of the context of franchises. *See Rosenblatt*, 750 F. App'x at 11–12. Here, GATX does not dispute that under the relevant agreements all payments made by Georgia Power were to be sent GATX's principal place of business in Chicago. Master Lease Agreement § 2.3. Similarly, notices were to be sent through Alabama and Illinois. *Id.* § 13.1. Thus while there was an ongoing contractual relationship between the parties, it did not require money or information being sent by Georgia Power into New York. This factor also weighs against the conclusion that GATX transacted business in New York.

Finally, while physical presence in New York or communications with New York are not required under § 302(a)(1), the absence of either weighs relatively heavily against exercising personal jurisdiction. *See, e.g., Berkshire Capital*, 2007 WL 2757116, at *4. GATX does not allege that Georgia Power was *ever* physically present in New York during the relevant period. Nor does GATX allege that Georgia Power even directed any communications into New York. Accordingly, the lack of communications into or presence in New York by Georgia Power further undermine GATX's argument.

Viewing these factors in total, the Court finds that GATX has failed to meet its burden of making a prima facie showing that Georgia Power transacted business in New York. While it is true that the parties had an ongoing contractual relationship, this relationship was negotiated outside of New York, involved railcars that never traveled through New York, and none of the payments or communications involved in the ongoing relationship were directed towards New York. Simply put, Georgia Power's only link to New York is that it contracted with a New York corporation and that contract had a New York choice-of-law clause. This is insufficient when

weighed against the other factors and in the total absence of any presence, contact, or communication with New York itself. *See Rodriguez*, 171 F.3d at 788–89 ("no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York" (quoting *Mayes v. Leipziger,* 674 F.2d 178, 185 (2d Cir. 1982)); *see also Berkshire Capital*, 2007 WL 2757116, at *4 (despite choice-of-law clause, §302(a)(1) did not confer personal jurisdiction since the defendants had not actually transacted any business in New York). Therefore, since Georgia Power did not transact any business in New York, this Court lacks personal jurisdiction over it.

## IV.    CONCLUSION

For the reasons given above, Georgia Power's motion to dismiss is hereby GRANTED. This resolves docket item number 13. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

Dated: September_____, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge